UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF | ) | |
| $156,733 IN UNITED STATES | ) | |
| CURRENCY, | ) | |
| | ) | |
| Defendant, *In Rem.* | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE, *IN REM***

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem.*

Plaintiff hereby alleges as follows:

**Nature of the Action**

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), because it: (i) was furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) is the proceeds from the sale of a controlled substance; and/or (iii) was used or intended to be used to facilitate an illegal drug transaction in violation of 21 U.S.C. § 841, *et seq.*

4. Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5. This complaint is verified by the attached Verification of Drug Enforcement Administration ("DEA") Task Force Officer Eddy Sobkowiak ("TFO Sobkowiak"), which is fully incorporated herein.

### The Defendant *In Rem*

6. The Defendant *in rem* consists of the following property:

- $156,733 (one hundred fifty-six thousand seven hundred thirty-three dollars) in United States currency.

(Hereinafter, the "subject property").

7. The subject property was seized on May 27, 2020.

8. The subject property is currently in the custody of the United States Marshals Service.

2

## Jurisdictional Statement

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

## Basis for Forfeiture

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

13. The subject property is further subject to forfeiture because there is a substantial connection between the subject property and a criminal offense, namely

a violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.*

**Summary of Facts**

*A. Overview of DEA Group 24 at Amtrak Union Station*

14. This Complaint describes an investigation conducted by members of DEA Group 24 at Union Station, to which TFO Sobkowiak is a member.

15. The primary responsibility of Group 24 is to investigate crimes involving the use of public train stations, commercial airlines and shipping companies to transport illegal drugs and drug proceeds.

16. Based upon the experience of Group 24 investigators and in similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand locations for illicit drugs.

17. States such as Texas and California are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

18. Person(s) involved in the illegal drug trade often hire couriers to transport drugs and/or proceeds from the sale of drugs by utilizing commercial airlines, trains and shipping companies.

19. In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

20. Factors that constitute suspicious travel itineraries include ticket purchases at the counter immediately prior to departure or short notice reservations for one-way travel, sometimes paid in cash.

21. Couriers travel with minimal or no luggage and often attempt to board at the last possible moment.

22. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airlines and passenger railroad services.

### B. Travel Itinerary and Suspicious Behavior of Amtrak passenger Alec Ryan Vandenbosch

23. On May 27, 2020, law enforcement officers assigned to Group 24, were alerted to the suspicious travel itinerary of Amtrak passenger Aleck Ryan Vandenbosch ("Vandenbosch").

24. Vandenbosch was traveling from Chicago, Illinois to Austin, Texas.

25. His one-way ticket was purchased on May 25, 2020, with a departure date of May 27, 2020, and was paid for by a third party with a credit card.

26. Based upon the training and experience of Group 24 investigators, illegal drug couriers often purchase tickets immediately before departure, often one day prior to the scheduled departure date.

27. Group 24 investigators also know that states on the west coast and along the Mexican border are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

5

28. Further, Group 24 investigators also know that those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or accompanying bags or suitcases.

29. At approximately 1:30 p.m. on May 27, 2020, TFO Sobkowiak and SA Frankel established surveillance on the platform where Amtrak train number 21 was boarding.

30. In an attempt to assist in locating Vandenbosch, agents obtained a photo of Vandenbosch through open internet resources.

31. At the time, the investigators were dressed in civilian clothing with no weapons, radios, or other law enforcement paraphernalia visible.

32. Shortly thereafter, TFO Sobkowiak and SA Frankel located Vandenbosch boarding a coach passenger car. TFO found that to be suspicious since Vandenbosch was assigned to sleeper car, number 2120.

33. Based upon the training and experience of Group 24 investigators, illegal drug couriers often board coach cars when they have a sleeper car reservation to avoid law enforcement contact.

34. TFO Sobkowiak advised the car attendant that Vandenbosch had a sleeper car reservation. The car attendant checked Vandenbosch's ticket and redirected him to the correct sleeper car.

### C. Initial Interview of Vandenbosch

35. At approximately 1:37 p.m., TFO Sobkowiak approached Vandenbosch on the train platform, identified himself as a law enforcement officer by displaying his credential and badge, and asked to speak with him.

36. TFO Sobkowiak informed Vandenbosch that he was not under arrest and that he was not in any trouble.

37. Vandenbosch stated that he understood and agreed to speak with the agents.

38. During the course of the consensual interview, TFO Sobkowiak asked to see Vandenbosch's boarding pass and identification and Vandenbosch produced a Michigan driver's license and an Amtrak boarding pass.

39. TFO Sobkowiak noted the information contained on the documents and immediately returned them to Vandenbosch.

40. When TFO Sobkowiak asked the purpose of the travel, Vandenbosch stated that he was traveling for pleasure.

41. TFO Sobkowiak asked Vandenbosch where he was traveling to, Vandenbosch stated he was going to Austin, Texas to visit family.

42. When TFO Sobkowiak asked Vandenbosch if he had any other luggage other than his suitcase, Vandenbosch stated that he did not.

43. When TFO Sobkowiak asked Vandenbosch whether he packed all the contents of his luggage himself Vandenbosch replied "yes."

44. When TFO Sobkowiak asked Vandenbosch whether anyone had asked him to carry, bring, or hold anything during his travel to Texas he said "[n]o."

7

45. When TFO Sobkowiak asked Vandenbosch if he was carrying any weapons, illegal drugs, or sharp objects in his luggage or on his person, Vandenbosch stated "[n]o."

46. TFO Sobkowiak asked Vandenbosch if he had any electronic devices on him or in his bag, and Vandenbosch replied that he had one cell phone.

47. When TFO Sobkowiak asked Vandenbosch if he was carrying any large amounts of currency, Vandenbosch stated "[n]o."

   D. *Consensual Search and Discovery of the Subject Property*

48. In order to verify his statements, TFO Sobkowiak asked Vandenbosch for permission to search his suitcase.

49. Vandenbosch gave his consent.

50. SA Frankel then searched Vandenbosch's suitcase. Upon opening the suitcase, SA Frankel observed a large clear vacuum sealed bag that was hidden in clothing that contained a large amount of rubber banded United States currency.

51. TFO Sobkowiak asked Vandenbosch about the currency. Vandenbosch stated he was going to Austin to buy a classic car.

52. SA Frankel continued to search the suitcase and found a clear knotted plastic baggie containing a white/clear crystal type substance.[1]

53. When TFO Sobkowiak asked Vandenbosch what the substance was, Vandenbosch did not respond.

---

[1] Illinois State Police Forensic Science Laboratory tested the substance and it was determined to be 42.7 grams of ketamine.

8

54. Based upon TFO Sobkowiak's training and experience, it was believed that Vandenbosch possessed a controlled substance along with a large amount of United States currency.

55. At that time, Vandenbosch was taken into custody and transported to the Amtrak holding facility.

56. While walking to the holding facility, TFO Sobkowiak asked Vandenbosch what substance was in the knotted plastic bag. Vandenbosch stated he did not know and the agents should test it to find out.

   E.   *Questioning of Vandenbosch at the Amtrak Office*

57. SA Frankel continued the search of Vandenbosch's suitcase and discovered a total of six large vacuum sealed bags containing United States currency hidden under clothing along with two large rubber banded bundles of United States currency that were in in the pocket of a pair of pants.

58. A search of Vandenbosch's person revealed another large rubber banded bundle of United States currency.

59. TFO Sobkowiak asked Vandenbosch if the currency was his and Vandenbosch said it was.

60. When TFO Sobkowiak asked Vandenbosch how much was there, Vandenbosch stated "a lot."

61. Vandenbosch further stated that he owned apartment buildings and the currency was from rent.

62. When TFO Sobkowiak asked Vandenbosch what type of car he was going to buy in Austin, Vandenbosch stated a Chevelle.

63. TFO Sobkowiak asked Vandenbosch who he was buying the car from, and Vandenbosch stated "some guy on Facebook."

64. Vandenbosch was not able to provide any information on the seller of the car.

65. While Vandenbosch was being fingerprinted, he asked for his rights to be read to him.

66. At approximately 2:30 p.m., TFO Sobkowiak read Vandenbosch his *Miranda* Warnings, as witnessed by SA Frankel.

67. Vandenbosch acknowledged his rights, signed a form indicating his acknowledgment, and stated he did not want to talk to the agents anymore.

68. At this time, Vandenbosch was processed and charged with possession of a controlled substance. The Amtrak Police transported Vandenbosch to the Chicago Police Department First District for holding and transport to Court.

69. While at the First District, Vandenbosch told Amtrak Officer Skiba that he was in possession of ketamine.

70. *Canine Examination of Subject Property*

71. Amtrak Canine Officer Robert Crowley ("Officer Crowley") utilized his certified narcotics detection K-9, Nana, to examine the subject property.

72. Nana is approximately three years old, and Officer Crowley is Nana's first handler.

73. Nana is certified by the State of Illinois (most recently on July 16, 202) and the North American Police Work Dog Association ("NAPWDA") (most recently on December 19, 2020).

74. Nana is trained and certified to detect four odors: (1) marijuana, (2) cocaine, (3) heroin, and (4) methamphetamine.

75. If at any time during a search Nana smells one of the four odors she is trained to detect, Nana will alert with a passive alert at the area where she smells the odor.

76. Officer Crowley conducted a scent investigation on the currency. As a result of the scent investigation, Nana gave a positive alert to the currency that had been contained in Vandenbosch's suitcase.

*F. Seizure of the subject Property for Forfeiture*

77. At this time, Group 24 investigators seized the subject property for forfeiture pursuant to DEA guidelines governing asset forfeiture.

78. DEA initiated administrative proceedings against the subject property by mailing a Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

79. In response to this notice, Vandenbosch filed a claim to the subject property with DEA on July 30, 2020.

80. On September 3, 2020, DEA referred this matter to the United States Attorney's Office in Chicago to initiate judicial forfeiture proceedings.

81. In total, $156,733 in United States currency was seized from Vandenbosch's suitcase as property subject to forfeiture, in the following denominations: 215 one

11

hundred-dollar bills, 106 fifty-dollar bills, 6,484 twenty-dollar bills, 17 ten-dollar bills, 16 five-dollar bills, and 3 one-dollar bills.

61. On September 2, 2020, Alec Ryan Vandenbosch was charged by indictment for the offense of possession of a controlled substance in Cook County, case number 20CR0831501.

## Conclusion

62. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq.* (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

63. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id.*

12

## Prayer for Relief

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1) That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2) That due notice be given to all parties to appear and show cause why forfeiture of the subject property to the United States in accordance with the claims herein set forth should not be decreed;

3) That this Court enter a judgment of forfeiture for the subject property to the United States; and

4) That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: *s/ Lindsay C. Jenkins*

LINDSAY C. JENKINS
Assistant United States Attorney
219 South Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-0962

13

NORTHERN DISTRIT OF ILLINOIS )
                                  ) SS
COUNTY OF COOK              )

## **VERIFICATION**

I, Eddy Sobkowiak having first been duly sworn, upon oath, depose and state as follows:

1. I am a Task Force Officer with the Drug Enforcement Administration and have been so employed since November 1998.

2. My duties and responsibilities as a Special Agent with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

3. I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

4. This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 26 of October, 2020, in Chicago, Illinois.

EDDY SOBKOWIAK
Task Force Officer
Drug Enforcement Administration